UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————— x

PANTHER PARTNERS INC., Individually :    Civil Action No. 1:18-cv-09848-PGG
and on Behalf of All Others Similarly Situated, :

                 Plaintiff, :    <u>CLASS ACTION</u>

                 :

    vs. :    LEAD PLAINTIFF'S MEMORANDUM OF
                 :    LAW IN SUPPORT OF UNOPPOSED
JIANPU TECHNOLOGY INC., DAQING :    MOTION FOR PRELIMINARY APPROVAL
(DAVID) YE, YILU (OSCAR) CHEN, :    OF CLASS ACTION SETTLEMENT,
JIAYAN LU, CAOFENG LIU, CHENCHAO :    CERTIFICATION OF THE SETTLEMENT
ZHUANG, JAMES QUN MI, KUI ZHOU, :    CLASS, AND APPROVAL OF NOTICE TO
YUANYUAN FAN, DENNY LEE, RONG360 :    THE SETTLEMENT CLASS
INC., GOLDMAN SACHS (ASIA) L.L.C., :
GOLDMAN SACHS & CO. LLC, MORGAN :
STANLEY & CO. INTERNATIONAL PLC, :
J.P. MORGAN SECURITIES LLC, CHINA :
RENAISSANCE SECURITIES (HONG :
KONG) LIMITED, CHINA RENAISSANCE :
SECURITIES (US) INC., LAW DEBENTURE :
CORPORATE SERVICES INC. and :
GISELLE MANON, inclusive, :

              Defendants. :

————————————————————————— x

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  SUMMARY OF THE LITIGATION AND THE SETTLEMENT ...................................4

    A.   Background ........................................................................................................4

    B.   Procedural History ............................................................................................5

    C.   Settlement Negotiations ....................................................................................5

III. THE SETTLEMENT TERMS ....................................................................................6

IV.  PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD
    PLAINTIFF TO NOTIFY THE SETTLEMENT CLASS ...................................................8

    A.   Lead Plaintiff and Lead Counsel Have Adequately Represented the
        Settlement Class ...............................................................................................10

    B.   The Proposed Settlement Is the Result of Good-Faith, Arm's-Length
        Negotiations ....................................................................................................10

    C.   The Relief Provided by the Settlement Is Adequate When Weighed
        Against the Risks of Litigation .......................................................................11

    D.   The Proposed Method for Distributing Relief Is Effective .............................13

    E.   Lead Counsel's Fee and Expense Request Is Fair and Reasonable ......................14

    F.   All Settlement Class Members Are Treated Equitably Relative to Each
        Other ................................................................................................................15

    G.   The *Grinnell* Factors Are Also Met ................................................................15

        1.   The Complexity, Expense, and Likely Duration of the Action
            Supports Approval of the Settlement ...........................................................15

        2.   The Reaction of the Settlement Class .........................................................15

        3.   The Stage of the Proceedings.......................................................................16

        4.   The Risk of Establishing Liability and Damages .......................................16

        5.   The Risks of Maintaining the Class Action Through Trial.........................16

        6.   The Ability of Defendants to Withstand a Greater Judgment....................17

**Page**

7.      The Reasonableness of the Settlement in Light of the Best Possible
        Recovery and the Attendant Risks of Litigation ........................................17

V.     CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT
       PURPOSES IS APPROPRIATE ....................................................................18

       A.     The Settlement Class Satisfies the Requirements of Rule 23(a)...........................19

              1.      Numerosity.................................................................................19

              2.      Commonality...............................................................................20

              3.      Typicality ...................................................................................20

              4.      Adequate Representation ..........................................................21

       B.     Rule 23(b)(3) Is Satisfied..................................................................22

              1.      Common Legal and Factual Questions Predominate.................................22

              2.      A Class Action Is Superior to Other Methods of Adjudication ................22

VI.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED .......................23

VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...............................................25

VIII.  CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................................19, 22

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)...........................................................................................................22

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
*Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)...........................................................................................20

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
(S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ...................................................................................11

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995).............................................................................................19

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)................................................................................10, 11, 17

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................. *passim*

*Dynex Cap., Inc. Sec. Litig.*,
No. 05 Civ. 1897(HB), 2011 WL 781215
(S.D.N.Y. Mar. 7, 2011) ...............................................................................................19

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................................17

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071(HB), 2003 WL 21672085
(S.D.N.Y. July 16, 2003) ...............................................................................................21

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987)...............................................................................17

**Page**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)....................................................................................19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)...............................................................................20, 21

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................10, 16, 17

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019).........................................................................3

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  No. 00 Civ. 6689(SAS), 2003 WL 22244676
  (S.D.N.Y. Sept. 29, 2003)........................................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
  243 F.R.D. 79 (S.D.N.Y. 2007) ..............................................................................10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144(CM), 2009 WL 5178546
  (S.D.N.Y. Dec. 23, 2009).....................................................................................20, 22

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ..........................................................................8, 19

*In re Vitamin C Antitrust Litig.*,
  No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514
  (E.D.N.Y. Oct. 23, 2012) ........................................................................................17

*In re Warner Chilcott Ltd. Sec. Litig.*,
  No. 06 Civ. 11515(WHP), 2008 WL 5110904
  (S.D.N.Y. Nov. 20, 2008) ........................................................................................24

*Korn v. Franchard Corp.*,
  456 F.2d 1206 (2d Cir. 1972)...................................................................................20

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002)...................................................................................22

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972).....................................................................................17

**Page**

*Pantelyat v. Bank of Am., N.A,*
  No. 16-cv-8964 (AJN), 2019 WL 402854
  (S.D.N.Y. Jan. 31, 2019) ......................................................................................... 10, 12

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985) ...................................................................................................... 23

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.,*
  277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................ 20, 21, 22, 23

*Strougo ex rel. Brazillian Equity Fund, Inc. v. Bassini,*
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........................................................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ............................................................................ 8, 10, 11, 24

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k ............................................................................................................. 4, 7, 14, 18
  §77l ....................................................................................................................... 4, 18
  §77o ................................................................................................................................ 4
  §77z-1(a)(4) ..................................................................................................................... 7
  §77z-1(a)(7) ................................................................................................................... 24

Federal Rules of Civil Procedure
  Rule 23 ....................................................................................................................... 3, 24
  Rule 23(a) ................................................................................................................... 18-19
  Rule 23(a)(1) ................................................................................................................... 19
  Rule 23(a)(2) ................................................................................................................... 20
  Rule 23(a)(3) ................................................................................................................... 20
  Rule 23(a)(4) ................................................................................................................... 21
  Rule 23(b) ....................................................................................................................... 19
  Rule 23(b)(3) ......................................................................................................... 18-19, 22
  Rule 23(c)(2)(B) ........................................................................................................... 23-24
  Rule 23(c)(3) ................................................................................................................... 23
  Rule 23(e) .......................................................................................................................... 9
  Rule 23(e)(1) ................................................................................................................ 9, 24
  Rule 23(e)(1)(B) ................................................................................................................ 9
  Rule 23(e)(2) ................................................................................................................. 3, 9
  Rule 23(e)(2)(C)(i) ..................................................................................................... 15, 16
  Rule 23(e)(2)(D) .............................................................................................................. 15
  Rule 23(e)(3) ..................................................................................................................... 9

**Page**

## SECONDARY AUTHORITIES

Laarni T. Bulan and Laura E. Simmons,
*Securities Class Action Settlements: 2020 Review and Analysis*
(Cornerstone Research 2021)...............................................................................................3, 18

Lead Plaintiff Panther Partners Inc. ("Lead Plaintiff"), on behalf of itself and all persons similarly situated, respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of the proposed Settlement between Lead Plaintiff, on behalf of itself and the proposed Settlement Class, and defendants Jianpu Technology Inc. ("Jianpu" or the "Company"), Rong360 Inc., Law Debenture Corporate Services Inc., Giselle Manon (the "Jianpu Defendants"), China Renaissance Securities (Hong Kong) Limited, China Renaissance Securities (US) Inc., Goldman Sachs (Asia) L.L.C., Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, and Morgan Stanley & Co. International plc (the "Underwriter Defendants") (collectively, "Defendants");[1] (ii) certification of the proposed Settlement Class for purposes of the Settlement;[2] (iii) approval of the form and manner of the settlement notices to the Settlement Class Members; and (iv) the scheduling of a hearing (the "Final Approval Hearing" or "Settlement Hearing") on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and litigation expenses.  The Settling Parties' agreed-upon Order Granting Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order") is filed herewith.[3]

## I.      PRELIMINARY STATEMENT

Lead Plaintiff and Defendants have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Action for $7.5 million

---

[1]   Lead Plaintiff was unable to effectuate service upon named defendants Daqing (David) Ye, Jiayan Lu, Caofeng Liu, Chenchao Zhuang, James Qun Mi, Kui Zhou, Yuanyuan Fan, Yilu (Oscar) Chen, and Denny Lee (the "Unserved Defendants").

[2]   As detailed more fully below, except for various exceptions, the "Settlement Class" consists of all Persons who purchased or otherwise acquired Jianpu ADSs pursuant or traceable to the Company's Registration Statement issued in connection with the Company's November 16, 2017 IPO.

[3]   Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement ("Stipulation"), filed herewith.  All emphasis is added and all citations are omitted unless otherwise noted.

in cash.  This resolution falls well within the range of possible approval and was only achieved following arm's-length negotiations, which included a full-day mediation session conducted by an experienced independent mediator, Gregory Lindstrom, Esq. of Phillips ADR, and, thereafter, multiple discussions with the mediator during which the Settling Parties separately presented arguments and proposals that were conveyed by the mediator to the opposing parties.  As set forth herein, based on, *inter alia*: (i) Lead Plaintiff's thorough investigation in connection with preparing an amended complaint; (ii) evaluation of potential damages; (iii) evaluation of the decision denying Defendants' motion to dismiss; (iv) preparation and exchange of formal mediation statements by the Settling Parties; and (v) participation in the mediation session, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action, including the potential limitations on damages and recovery, prior to agreeing to accept the proposed Settlement.  The terms of the Settlement are set forth in the Stipulation, filed herewith.

Lead Plaintiff and Lead Counsel approve of the Settlement.  As demonstrated at the lead plaintiff appointment stage, Lead Plaintiff has a significant financial interest in this case (ECF No. 16-2), oversaw the litigation and authorized the Settlement.  Lead Counsel are experienced securities litigators and are recognized leaders in the field.  Based upon Lead Counsel's experience and evaluation of the facts and the applicable law, Lead Counsel – with Lead Plaintiff's endorsement – submit that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of the Settlement Class.  This is especially so in light of the risk that the Settlement Class might recover substantially less (or nothing) if the Action were litigated through summary judgment motions, trial, and the likely post-trial motions and appeals that would follow (a process that could last several years).  Indeed, Lead Plaintiff estimates that the proposed Settlement returns approximately 9.2% of reasonably recoverable damages – which exceeds the median percentage of recovery for similar

securities class actions. *See, e.g.*, Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* at 7, Fig. 6 (Cornerstone Research 2021) ("Cornerstone Report") (noting that in securities settlements from 2011-2020, the median settlement in cases alleging only Sections 11 and 12(a)(2) claims obtained 7.4% of alleged statutory damages).

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Settlement Class should be notified of the proposed Settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (to grant preliminary approval, the court need only find that it "'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal'"). In light of the recovery obtained, and the risks and expenses posed by protracted litigation against the Defendants, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order, which will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the proposed Settlement Class for purposes of the Settlement; (iii) approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the Stipulation; (iv) find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (v) set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.     SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.     Background

This is a class action asserting claims arising under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") brought on behalf of purchasers of American Depository Shares ("ADSs") of Jianpu in or pursuant to its initial public offering (the "IPO") of 22.5 million ADSs at $8.00 per share, which took place on or about November 16, 2017.  Lead Plaintiff alleged that the Registration Statement for the IPO failed to disclose the extent to which Chinese laws and regulations posed a material risk to Jianpu's revenues from loan recommendation services.  First, Lead Plaintiff alleged that the Registration Statement failed to disclose Jianpu's exposure to financial service providers that were subject to regulations in China governing "peer-to-peer" (or "P2P") lending, known as the Interim Measures – or that the Interim Measures were causing a decline in the number of P2P financial service providers operating in China at the time of the IPO.  Second, Lead Plaintiff alleged the Registration Statement failed to disclose that a material portion of the loans offered by financial service providers on Jianpu's platform featured annualized interest rates (also known as "APR") in excess of 36%, in violation of PRC laws and regulations.

Less than a month after the IPO, regulatory authorities in China introduced a series of measures designed to enhance governmental enforcement of both the Interim Measures and the 36% APR cap.  This heightened regulatory enforcement caused the growth in Jianpu's revenues from loan recommendation services to slow dramatically, beginning in the first quarter of 2018 – the first full quarter after the regulations took effect.  Jianpu ultimately reported that, for 2018, its revenues from loan recommendation services decreased by 9.3% year-over-year ("y-o-y"), "primarily due to the decrease in the number of loan applications on the Company's platform" – in contrast to the 369% y-o-y increase that the Company had reported for 2017.  On October 25, 2018, the day this Action was filed, Jianpu's ADSs traded at $4.75 per ADS – a decline of approximately 40% from the IPO price.

As a result of the Registration Statement's alleged failure to disclose the risk posed to Jianpu's revenues by Chinese laws and regulations and alleged failure to disclose that a material portion of the loans offered on Jianpu's platform violated Chinese laws and regulations, Lead Plaintiff alleged that it and other purchasers of Jianpu ADSs suffered damages.

**B.      Procedural History**

Lead Plaintiff commenced this Action by filing the initial complaint on October 25, 2018. On January 10, 2019, the Court appointed Panther Partners Inc. as Lead Plaintiff and approved of its selection of Lead Counsel.  ECF No. 17.  Lead Plaintiff filed a comprehensive Amended Complaint on March 28, 2019 (the "Complaint").  ECF No. 30.  On June 3, 2019, Defendants moved to dismiss the Complaint for failure to state a claim under Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 52.  Lead Plaintiff opposed the motion and moved to strike certain documents on August 5, 2019.  ECF Nos. 47, 57.  On August 19, 2019, the moving Defendants served their memorandum in opposition to Lead Plaintiff's motion to strike.  ECF No. 51.  On August 26, 2019, Lead Plaintiff served its reply memorandum in further support of its motion to strike.  ECF No. 50.  On September 19, 2019, the moving Defendants filed their reply memorandum in further support of their motion to dismiss.  ECF No. 55.  On March 13, 2020, the Court denied Lead Plaintiff's motion to strike (ECF No. 64), and on September 27, 2020, the Court denied Defendants' motion to dismiss.  ECF No. 67.  Defendants answered the Complaint on November 12, 2020.  ECF Nos. 74-76.

The Settling Parties served, and responded to, discovery requests, and met and conferred on the scope of discovery.  The Settling Parties thereafter sought and obtained a discovery stay while they attempted mediation.

**C.      Settlement Negotiations**

After the Defendants filed their Answers to the Complaint and discovery was commencing,

the Settling Parties began discussing the possibility of conducting a mediation to determine whether they could achieve a settlement of the Action. The Settling Parties thereafter selected Gregory Lindstrom, Esq., of Phillips ADR as mediator. Mr. Lindstrom is a former litigator and an experienced mediator in complex cases. Mr. Lindstrom conducted a mediation session attended by counsel for the Settling Parties on March 15, 2021. In advance of that session, on March 2, 2021, Lead Plaintiff and Defendants submitted detailed mediation statements, which discussed liability and damages. The Settling Parties participated in a full-day mediation session, which did not result in a settlement, but continued to negotiate with the assistance of Mr. Lindstrom.

Following several months of negotiations and the exchange and counter-exchange of numerous proposals, Mr. Lindstrom made a mediator's proposal that the Action settle for $7.5 million, which was accepted by the Settling Parties. On August 27, 2021, the Settling Parties informed the Court that they had reached an agreement-in-principle to settle the Action. ECF No. 97. The Settling Parties thereafter negotiated the non-monetary terms of the Settlement, ultimately resulting in the Stipulation. The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement, and a compromise of all matters that are in dispute, between the Settling Parties.

In light of the substantial benefit to the Settlement Class, the significant costs and risks of protracted litigation – and in recognition of the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator – Lead Plaintiff respectfully submits that the proposed Settlement warrants preliminary approval so that notice can be provided to the Settlement Class. Lead Plaintiff further submits that the Court should, preliminarily and for purposes of the Settlement, certify the Settlement Class, appoint Lead Plaintiff as Class Representative, and appoint Lead Counsel as Class Counsel.

## III. THE SETTLEMENT TERMS

The Settlement provides that Jianpu will pay, or cause to be paid, $7.5 million into the

Escrow Account, which amount plus accrued interest comprises the Settlement Fund.  Stipulation, ¶2.1.  Notice to the Class and the cost of settlement administration ("Administrative Costs") will be funded by the Settlement Fund.  *Id.*, ¶3.5.  Lead Plaintiff proposes a nationally recognized class action settlement administrator, Gilardi & Co. LLC, to be retained subject to the Court's approval.

The Notice provides that Lead Counsel will submit an application in support of final approval of the Settlement, for approval of the proposed Plan of Allocation of Settlement proceeds, and for an award of attorneys' fees in an amount not to exceed 33-1/3% of the Settlement Amount and litigation expenses in an amount not to exceed $75,000, including an award to Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4), plus interest accrued on both amounts at the same rate as earned by the Settlement Fund.  The Notice further explains that such fees and expenses shall be paid from the Settlement Fund.

Once Administrative Costs, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.  Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their Jianpu ADS purchases, acquisitions and sales, and is based on the statutory damages calculations under Section 11(e) of the Securities Act.

Lead Plaintiff and Defendants have entered into a Supplemental Agreement that provides that if the number of Jianpu ADSs eligible to recover damages request exclusion from the Settlement Class in excess of a certain amount, Defendants shall have the option to terminate the Settlement. Stipulation, ¶10.5.

In exchange for the benefits provided under the Stipulation, Settlement Class Members will release the "Released Claims," which include:

> [A]ll claims, demands, losses, costs, interest, penalties, fees, attorneys' fees, expenses, rights, causes of action, actions, duties, obligations, judgments, debts, sums of money, suits, contracts, agreements, promises, damages, and liabilities of every nature and description, including "Unknown Claims" as defined [in the Stipulation], whether direct or indirect, representative, class, individual, asserted or unasserted, matured or unmatured, accrued or unaccrued, foreseen or unforeseen, disclosed or undisclosed, contingent or fixed or vested, or at law or equity, whether arising under federal, state, local, foreign, statutory, common, or administrative, or any other law, statute, rule, or regulation, that (a) arise out of, are based upon, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations, misrepresentations, or omissions involved, set forth, alleged, or referred to in this Action, or which could have been alleged in, referred to or made part of this Action; and (b) arise out of, are based upon, or relate in any way to the purchase, acquisition, sale, transfer, investment, disposition, or other transaction in, or holding of Jianpu ADSs pursuant or traceable to the Registration Statement issued in connection with Jianpu's IPO on the New York Stock Exchange on November 16, 2017. Released Claims also includes any and all claims arising out of, relating to, or in connection with the Settlement or resolution of the Action (including Unknown Claims), except claims to enforce any of the terms of [the] Stipulation.

Stipulation, ¶1.33.

The proposed Settlement is a very good recovery on the claims asserted in this Action, and is in all respects fair, adequate, reasonable, and in the best interests of the Settlement Class. Therefore, the Court should grant preliminary approval of the Settlement and permit notice to be provided to the Settlement Class.

## IV.  PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE SETTLEMENT CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Federal Rule of Civil Procedure ("Rule") 23(e) requires judicial approval of a class action settlement.  *See* Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval.").  The approval process typically takes place in two stages.  Pursuant to recently amended Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

A.  the class representatives and class counsel have adequately represented the class;

B.  the proposal was negotiated at arm's length;

C.  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D.  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors, known as the *Grinnell* factors, some of which overlap with Rule 23(e)(2): "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Detroit v. Grinnell Corp.*, 495 F.2d

448, 463 (2d Cir. 1974); *see also Pantelyat v. Bank of Am., N.A*, No. 16-cv-8964 (AJN), 2019 WL

402854, at \*3-\*4 (S.D.N.Y. Jan. 31, 2019).  A proposed settlement is substantively fair if the totality

of the nine *Grinnell* factors weigh in favor of that conclusion.  *See Wal-Mart*, 396 F.3d at 117 (citing

*Grinnell*, 495 F.2d at 463); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).  "In finding

that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should

consider the totality of these factors in light of the particular circumstances.'"  *In re Glob. Crossing*

*Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Here, Lead Plaintiff is requesting only that the Court take the first step in the settlement

approval process and grant preliminary approval of the proposed Settlement.  The proposed

Settlement provides a recovery of $7.5 million in cash, which is "'within the range of possible

approval.'"  *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

### A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

As discussed herein, Lead Plaintiff's interests in this case are directly aligned with those of

the other Settlement Class Members.  Lead Plaintiff has demonstrated its ability and willingness to

pursue the litigation on behalf of the Settlement Class through its involvement in the litigation and in

approving the Settlement.  Lead Plaintiff and its counsel vigorously advocated for the interests of

Jianpu shareholders and have obtained excellent results.  Lead Plaintiff's decision to settle this case

was informed by a thorough investigation of the relevant claims, the filing of a detailed amended

complaint, briefing the opposition to Defendants' motion to dismiss and filing a motion to strike, and

participation in a hard-fought mediation followed by extensive, post-mediation settlement

negotiations.  Accordingly, this factor weighs in favor of approval.

### B.    The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of

arm's-length negotiations between counsel.  *See Wal-Mart*, 396 F.3d at 116.  As described above, the Settlement was reached only after extensive, arm's-length negotiations before Gregory Lindstrom, Esq., an experienced mediator in complex cases.  *See, e.g.*, *D'Amato*, 236 F.3d at 85 (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  After lengthy negotiations, the Settling Parties reached an agreement-in-principle to settle the Action.

In addition, the Settling Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle.  Lead Counsel conducted an extensive investigation prior to drafting and filing the Complaint, which included, among other things, a thorough review of: (i) Jianpu's public SEC filings; (ii) presentations, press releases, media, and analyst reports made by or about the Company; (iii) transcripts of Jianpu's conference calls with analysts and investors; and (iv) publicly available data relating to Jianpu ADSs.  In addition, the Settling Parties briefed Defendants' motion to dismiss and Lead Plaintiff's motion to strike.  Lead Plaintiff and Lead Counsel therefore had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses thereto when they agreed to the Settlement.  These circumstances confirm the presumption of fairness of the proposed Settlement.

### C.    The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case."  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  A court need only determine whether the Settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs necessarily inherent in taking any litigation to completion.'" *Pantelyat*, 2019 WL 402854, at *7. If approved, the Settlement will provide Settlement Class Members with $7.5 million in cash, less reasonable attorneys' fees, litigation expenses, an award to Lead Plaintiff, if approved, Administrative Costs, Taxes, and Tax Expenses. The amount obtained for the Settlement Class represents a very good result, particularly in light of the potential maximum damages and the risk that Lead Plaintiff and the Settlement Class would recover nothing.

Defendants raised – and would have continued to press – several arguments to support their contention that Lead Plaintiff could not demonstrate liability and its claimed damages in the Action: (1) Defendants did not make any false or misleading statements or omissions; (2) the Chinese regulations that Defendants allegedly failed to adequately disclose were implemented after the IPO; (3) Jianpu's Registration Statement warned of the risk that new regulations could be enacted, and warned of the potential impact on the Company; (4) any losses incurred by Lead Plaintiff and the Settlement Class were not the result of any misstatements or omissions by Defendants; and (5) to the extent that any of the Lead Plaintiff's or the Settlement Class' damages could be attributed to Defendants, the amount was substantially lower than claimed by Lead Plaintiff.

If Defendants were successful in any of these arguments, the Court or a jury could have determined that Lead Plaintiff was unable to recover any damages at all, or that any damages should be significantly reduced. While Lead Plaintiff believes that it could have overcome these challenges, it also recognizes that ultimate success is far from certain. If the case were to proceed, Defendants would have additional defenses and arguments to raise at summary judgment, class certification and trial. Additionally, many of these issues and Lead Plaintiff's allegations, and the defenses raised by Defendants, would require analysis by experts, including on materiality, causation and damages.

Discovery costs (including document production and translation and hosting fees) as well as

experts (for class certification, expert reports, and expert testimony) would be significant. The expenses would be magnified by the difficulties and delays inherent in the Action where witnesses are located in China, and where much of the evidence would require translation, if it could be obtained at all. Because this Action is settling against Defendants at this time, the litigants and the Court have been spared substantial delay and expense. Even if the Settlement Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Settlement Class any recovery for years, thereby reducing the value of any such recovery. *See Strougo ex rel. Brazillian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"). Moreover, the Jianpu Defendants contended that Lead Plaintiff would be unable to collect any judgment that was obtained against them or enforce a judgment in China.

The proposed Settlement balances the risks, costs, and delays inherent in complex securities class action cases such as this one. When viewed in the context of these risks and the uncertainty of any later recovery from Defendants, the Settlement is extremely beneficial to the Settlement Class.

**D.    The Proposed Method for Distributing Relief Is Effective**

The methods of the proposed notice and claims administration process are effective. Specifically, this includes well-established procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice electronically once on *PR Newswire* or *GlobeNewswire* and in print once in the *Investor's Business Daily*. Also, a settlement-specific website will be created where Settlement Class Members can find answers to frequently asked questions, and key

documents will be posted, including the Stipulation, Notice, Proof of Claim and Release, Preliminary Approval Order, and all briefs and declarations submitted in support of the Settlement and the requested fees and expenses.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and how money will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the assistance of Lead Counsel's in-house damages analyst and is consistent with Section 11(e) of the Securities Act.

Finally, Gilardi & Co. LLC, the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review denial of their claims, and will distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation.  Stipulation, ¶¶7.1, 7.11(c)-(d).

### E.    Lead Counsel's Fee and Expense Request Is Fair and Reasonable

As set forth in the Notice, Lead Counsel will apply for an award of attorneys' fees of up to 33-1/3% of the Settlement Amount, plus litigation expenses in an amount not to exceed $75,000 incurred in connection with the prosecution and resolution of this Action.  This request is reasonable and in line with other recent fee awards in New York federal courts.  *See, e.g.*, *In re Deutsche Bank AG Sec. Litig.*, No. 1:09-cv-01714-GHW-RWL (S.D.N.Y. June 11, 2020) (awarded one-third (or 33.33%) of $18.5 million recovery, plus expenses); *In re Patriot National, Inc. Sec. Litig.*, No. 1:17-cv-01866-ER (S.D.N.Y. Nov. 6, 2019) (awarded 33% of $6.5 million recovery, plus expenses); *Landmen Partners Inc. v. Blackstone Group*, No. 08-cv-03601-HB-FM (S.D.N.Y. Dec. 18, 2013) (awarded fees of 33-1/3% of $85 million recovery, plus expenses); *In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig.*, No. 1:08-cv-08235- PAC (S.D.N.Y. Sept. 6, 2012) (awarded

fees of 33% of $6.25 million recovery, plus expenses); *Levine v. Atricure, Inc.*, No. 1:06-cv-14324-RJH (S.D.N.Y. May 27, 2011) (awarded fees of 33-1/3% of $2 million recovery, plus expenses); *In re Noah Educ. Holdings Ltd. Sec. Litig.*, No. 1:08-cv-09203 (S.D.N.Y. May 27, 2011) (awarded fees of 33-1/3% of $1.75 million recovery, plus expenses).

**F.    All Settlement Class Members Are Treated Equitably Relative to Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Settlement Class Member preferentially.  The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants.  Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution pursuant to the Plan of Allocation depending upon whether they have a Recognized Loss.  Lead Plaintiff, just like all other Class Members, will be subject to the same formula for distribution of the Net Settlement Fund.

**G.    The *Grinnell* Factors Are Also Met**

**1.    The Complexity, Expense, and Likely Duration of the Action Supports Approval of the Settlement**

The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above.  In addition, Lead Plaintiff advanced numerous complex legal and factual issues under the federal securities laws.  How the Court would rule on a motion for summary judgment or the jury would find at trial was uncertain; this Settlement eliminates the risks of adverse decisions.

**2.    The Reaction of the Settlement Class**

Lead Plaintiff has participated throughout the prosecution of the case and was actively involved in the decision to enter into the Settlement.  This factor is otherwise inapplicable at this stage, as notice regarding the Settlement has not yet been mailed or otherwise distributed.

### 3.     The Stage of the Proceedings

Lead Plaintiff's and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are certainly adequate to support the Settlement, as discussed herein.  Lead Plaintiff conducted sufficient due diligence and investigation to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement discussions with Defendants.  *See Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

Lead Plaintiff and Lead Counsel conducted a thorough investigation prior to filing the initial complaint and while drafting the amended complaint.  They reviewed the facts in light of the legal and factual arguments made by Defendants in their motion to dismiss and successfully defeated that motion.  In addition, Lead Plaintiff drafted detailed submissions in preparation for and in connection with the mediation session, and also held discussions with Defendants' counsel, through the mediator, that crystallized for them the strengths and potential weaknesses of their claims and Defendants' defenses.  These strengths and weaknesses were the subject of back-and-forth discussions during the mediation session, as well as during the post-mediation negotiations facilitated by Mr. Lindstrom.  Thus, Lead Plaintiff has sufficient knowledge of the strengths and weaknesses of its claims at this stage of the litigation to support the Settlement.

### 4.     The Risk of Establishing Liability and Damages

The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  For the same reasons explained above with respect to why Lead Plaintiff has satisfied the Rule 23(e)(2)(C)(i) factor, Lead Plaintiff has satisfied the fourth *Grinnell* factor.

### 5.     The Risks of Maintaining the Class Action Through Trial

Lead Plaintiff has not yet briefed its motion for class certification and Lead Plaintiff runs the risk that the Court may deny any future motion to certify the Settlement Class.  Additionally, even if

the Court were to grant a future motion to certify the Settlement Class, the Court may revisit certification at any time – presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory").  Thus, this factor weighs in favor of preliminary approval of the Settlement.

### 6.    The Ability of Defendants to Withstand a Greater Judgment

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *See D'Amato*, 236 F.3d at 86.  While it is possible that Defendants here could withstand a judgment in excess of $7.5 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and, in fact, the ability of defendants to pay more money does not render a settlement unreasonable.  *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012).

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy*

*Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at \*3-\*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

Based on the allegations of the Complaint, Lead Plaintiff estimates that maximum statutory class-wide damages were approximately $81 million.  Therefore, the $7.5 million Settlement represents an excellent result: approximately 9.2% of estimated damages.  As such, the Settlement falls well within the range of possible approval.  *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); Cornerstone Report at 7, Fig. 6 (noting that in securities settlements from 2011-2020, the median settlement in cases alleging only Sections 11 and 12(a)(2) Securities Act claims obtained 7.4% of alleged statutory damages).  The proposed Settlement is thus well within the range of similar Securities Act settlements, warranting preliminary approval by this Court.

## V.   CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

Lead Plaintiff requests that the Court certify the proposed Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Settling Parties have stipulated to certification of the following proposed Settlement Class:

> "Settlement Class" means all Persons who purchased or otherwise acquired Jianpu ADSs pursuant or traceable to the Company's Registration Statement issued in connection with the Company's November 16, 2017 IPO.  Excluded from the Settlement Class are: (i) Defendants, Related Parties, and their respective successors and assigns; (ii) past and current officers and directors of Jianpu; (iii) Immediate Family Members of any Defendant; (iv) the legal representatives, heirs, successors, or assigns of the Defendants; (v) any entity in which any of the above excluded Persons have or have had a majority ownership interest, provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class; and (vi) Opt-Outs.

Stipulation, ¶1.39.

The Settling Parties further stipulate to certification of Lead Plaintiff as class representative

for the Settlement Class, and appointment of Robbins Geller Rudman & Dowd LLP and Abraham, Fruchter & Twersky, LLP as class counsel for the Settlement Class.

Certification of a class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. A class must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . ."). The proposed Settlement Class meets all the requirements of Rule 23(a) and Rule 23(b)(3), there is no likelihood of abuse of the class action device, and the Settlement remains subject to the Court's approval at the Settlement Hearing.

### A.     The Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1.     Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit and courts within it have repeatedly held that numerosity is presumed when the proposed class would have at least 40 members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Dynex Cap., Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2011 WL 781215, at *1 (S.D.N.Y. Mar. 7, 2011).

There were 22.5 million Jianpu ADSs sold in the IPO. While the exact number of members of the Settlement Class is unknown to Lead Plaintiff, Lead Plaintiff estimates that there are thousands of investors residing in a geographically disbursed area, rendering joinder impracticable.

## 2.   Commonality

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  Securities cases easily meet the commonality requirement, because commonality is "plainly satisfied [where] the alleged misrepresentations . . . relate to all the investors, [because] the existence and materiality of such misrepresentations obviously present important common issues."  *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972).

The Complaint asserts the same claims on behalf of all members of the Settlement Class.  All Settlement Class Members are purchasers of Jianpu ADSs pursuant to or traceable to the IPO, and allegedly sustained injury due to Defendants' alleged material misrepresentations or omissions in the Registration Statement.  All Settlement Class Members make the same legal claims under the Securities Act.  Lead Plaintiff has alleged common issues of fact and law that affect all members of the Settlement Class, satisfying the commonality requirement of Rule 23(a)(2).  *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 106 (S.D.N.Y. 2011) (finding "commonality" established, explaining that "[t]he common questions presented by this case – essentially, whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers").

## 3.   Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig*., 574 F.3d 29, 35 (2d Cir. 2009).  "'Typical' does not mean 'identical.'"  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

As with commonality, typicality is plainly satisfied here.  Like the other members of the Settlement Class, Lead Plaintiff alleges that it purchased Jianpu ADSs at artificially inflated prices due to Defendants' material misstatements and omissions in the Registration Statement and was damaged when the truth emerged.  Thus, the claims of Lead Plaintiff and the Settlement Class rely on the same facts and legal theories to establish liability.  Accordingly, the typicality requirement is met.  *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 107.

### 4.  Adequate Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Flag Telecom*, 574 F.3d at 35.  Given that the Settlement Class was injured by the same allegedly materially false and misleading statements as Lead Plaintiff, Lead Plaintiff's interests are directly aligned with the interests of the Settlement Class.  *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 110 (citing *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071(HB), 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003)).  Lead Plaintiff has otherwise already demonstrated its commitment to prosecuting this Action on behalf of the Settlement Class.

Lead Plaintiff retained experienced counsel to conduct the litigation.  Lead Counsel have demonstrated that they are qualified and capable of prosecuting this Action.  Moreover, courts have consistently found both Robbins Geller Rudman & Dowd LLP and Abraham, Fruchter & Twersky, LLP to be well suited as class counsel in stockholder class actions, with each firm having prosecuted many securities class actions (including within this District) for many years with proven track records of success.  *See* www.rgrdlaw.com; www.aftlaw.com.

### B.       Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.       Common Legal and Factual Questions Predominate

Common issues predominate where each member of a class is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct.  *See Marsh & McLennan*, 2009 WL 5178546, at *11.  As the U.S. Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625.  Common issues also predominate "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Here, Settlement Class Members are subject to the same misrepresentations and omissions, and it is alleged that Defendants' misrepresentations were part of a common course of conduct; thus common questions predominate.  Lead Plaintiff's claims and the claims of the Settlement Class are also susceptible to common evidence and proof, because if Lead Plaintiff and each Settlement Class Member brought individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-69 (2013); *see also Merrill Lynch*, 277 F.R.D. at 114.

### 2.       A Class Action Is Superior to Other Methods of Adjudication

The class action device is the superior method for resolving the claims in this Action.  Courts

have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities laws.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (stating that "most of the plaintiffs would have no realistic day in court if a class action were not available").

This class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the securities law claims of the large number of investors at issue here.  *See Merrill Lynch*, 277 F.R.D. at 120.  Without the class action device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to settle.  Moreover, certification of the Settlement Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

## VI.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

The Court should approve the form and content of the proposed Notice and Summary Notice. *See* Stipulation Exs. A-1 & A-3.  The Notice is written in clear, straightforward language, and features a "Q & A" format that clearly sets out the relevant information and answers most questions Settlement Class Members will have.  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises Settlement Class Members of the nature of the Action, the definition of the Settlement Class, the claims and issues, that a Settlement Class Member may object to any aspect of the Settlement or enter an appearance through counsel if desired, that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so), the procedures and deadlines for filing claim forms, and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3).

The Notice also satisfies the separate disclosure requirements of the PSLRA.  The Notice states: (i) the amount of the settlement proposed to be distributed to the Settlement Class, determined

in the aggregate and on an average per ADS basis; (ii) provides a statement concerning the issues about which the parties disagree; (iii) states the maximum amount of attorneys' fees and expenses (both on an aggregate and average per ADS basis) that Lead Counsel will seek; (iv) provides the names, addresses, and telephone numbers of Lead Counsel and the Claims Administrator, who will be available to answer questions from Settlement Class Members; (v) provides a brief statement explaining the reasons why the Settling Parties are proposing the Settlement; and (vi) includes a summary of this information. *See* 15 U.S.C. §77z-1(a)(7). Additionally, the Notice will disclose the date, time and location of the Settlement Hearing and the procedures and deadlines for the submission of Proof of Claim forms and objections to any aspect of the Settlement.

Rules 23(c)(2)(B) and (e)(1) require a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to [those] who can be identified through reasonable effort" and require the court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement . . . ." The notice plan meets these standards. Lead Plaintiff, through an experienced Claims Administrator, will cause the Notice to be sent by first class mail to every Settlement Class Member who can be identified through reasonable effort. This will be accomplished by using record holder data in the United States to be produced by Jianpu from its transfer agent, and by reaching out to broker-dealers for the last-known names and addresses of potential Settlement Class Members. The Summary Notice will be published once in *Investor's Business Daily* and once electronically on the Internet.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA. The Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114; *see also In re*

*Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff proposes the following schedule for Settlement-related events in this case:

| Event | Deadline for Compliance |
|---|---|
| Deadline for Jianpu to provide Gilardi with transfer records | Ten (10) business days after entry of the Preliminary Approval Order |
| Deadline for Mailing of the Notice and Proof of Claim and Release to Settlement Class Members | No later than thirty (30) calendar days after the entry of Preliminary Approval Order (Preliminary Approval Order, ¶8) |
| Deadline for Publication of the Summary Notice | No later than ten (10) calendar days after the mailing of the Notice (Preliminary Approval Order, ¶12) |
| Deadline for Lead Plaintiff to file papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses | No later than fourteen (14) calendar days prior to the deadline for objections (Preliminary Approval Order, ¶21) |
| Deadline for submitting exclusion requests | No later than sixty (60) calendar days after the mailing of the Notice (Preliminary Approval Order, ¶16) |
| Deadline for submitting objections | No later than sixty (60) calendar days after the mailing of the Notice (Preliminary Approval Order, ¶19) |
| Deadline for submitting Proof of Claim and Release Forms | No later than ninety (90) calendar days after the mailing of the Notice (Preliminary Approval Order, ¶15(a)) |
| Deadline for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses | No later than seven (7) calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶22) |
| Date for the Settlement Hearing | Lead Plaintiff suggests approximately one hundred twenty (120) calendar days after entry of the Preliminary Approval Order |

## VIII.   CONCLUSION

For the reasons set forth herein, Lead Plaintiff respectfully requests that the Court preliminarily approve the Settlement and enter the accompanying Preliminary Approval Order.

DATED:  November 15, 2021          Respectfully submitted,

                                   ABRAHAM FRUCHTER
                                     & TWERSKY, LLP
                                   JACK G. FRUCHTER
                                   TODD KAMMERMAN


                                        */s/ Todd Kammerman*
                                   TODD KAMMERMAN

                                   450 Seventh Avenue, 38th Floor
                                   New York, NY 10123
                                   Telephone: 212/279-5050
                                   212/279-3655 (fax)
                                   jfruchter@aftlaw.com
                                   tkammerman@aftlaw.com

                                   ROBBINS GELLER RUDMAN
                                     & DOWD LLP
                                   SAMUEL H. RUDMAN
                                   ERIN W. BOARDMAN
                                   MAGDALENE ECONOMOU
                                   58 South Service Road, Suite 200
                                   Melville, NY  11747
                                   Telephone:  631/367-7100
                                   631/367-1173 (fax)
                                   srudman@rgrdlaw.com
                                   eboardman@rgrdlaw.com
                                   meconomou@rgrdlaw.com

                                   Lead Counsel for Lead Plaintiff