UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
PANTHER PARTNERS INC., Individually
and on Behalf of All Others Similarly Situated,

                  Plaintiff,

    vs.

JIANPU TECHNOLOGY INC., DAQING
(DAVID) YE, YILU (OSCAR) CHEN,
JIAYAN LU, CAOFENG LIU, CHENCHAO
ZHUANG, JAMES QUN MI, KUI ZHOU,
YUANYUAN FAN, DENNY LEE, RONG360
INC., GOLDMAN SACHS (ASIA) L.L.C.,
GOLDMAN SACHS & CO. LLC, MORGAN
STANLEY & CO. INTERNATIONAL PLC,
J.P. MORGAN SECURITIES LLC, CHINA
RENAISSANCE SECURITIES (HONG
KONG) LIMITED, CHINA RENAISSANCE
SECURITIES (US) INC., LAW DEBENTURE
CORPORATE SERVICES INC. and
GISELLE MANON, inclusive,

                  Defendants.
———————————————————— x

Civil Action No. 1:18-cv-09848-PGG

CLASS ACTION

MEMORANDUM OF LAW IN SUPPORT
OF LEAD PLAINTIFF'S MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN
OF ALLOCATION

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND........................................................3

III.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ...................................3

IV.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENTS........................................................................................................5

     A.  The Law Favors and Encourages Settlements .........................................................5

     B.  The Settlement Must Be Procedurally and Substantively Fair, Reasonable,
         and Adequate ........................................................................................................6

     C.  The Proposed Settlement Is Procedurally and Substantively Fair,
         Reasonable, and Adequate .......................................................................................8

         1.  The Settlement Satisfies the Requirements of Rule 23(e)(2).......................8

             a.  Lead Plaintiff and Lead Counsel Have Adequately
                 Represented the Settlement Class ......................................................8

             b.  The Proposed Settlement Was Negotiated at Arm's Length
                 Before An Experienced Mediator ......................................................9

             c.  The Proposed Settlement Is Adequate in Light of the
                 Litigation Risks, Costs, and Delays of Trial and Appeal..............10

                 (1)  The Risks of Establishing Liability at Trial......................10

                 (2)  The Risks of Establishing Causation and Damages
                      at Trial..............................................................................11

                 (3)  The Settlement Eliminates the Additional Costs and
                      Delay of Continued Litigation ...........................................12

             d.  The Proposed Method for Distributing Relief Is Effective............14

             e.  Lead Counsel's Request for Attorneys' Fees Is Reasonable ........14

             f.  The Parties Have No Other Agreements Besides an
                 Agreement to Address Requests for Exclusion .............................15

             g.  The Settlement Ensures Settlement Class Members Are
                 Treated Equitably.............................................................................15

Page

2.     The Settlement Satisfies the Remaining *Grinnell* Factors .........................16

     a.     The Lack of Objections to Date Supports Final Approval ............16

     b.     Lead Plaintiff Had Sufficient Information to Make an
          Informed Decision Regarding the Settlement.................................17

     c.     Maintaining Class-Action Status Through Trial Presents a
          Continuing Risk ............................................................................18

     d.     Defendants' Ability to Withstand a Greater Judgment.................18

     e.     The Settlement Amount Is Reasonable in View of the Best
          Possible Recovery and the Risks of Litigation .............................19

V.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE .......................................20

VI.    NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS
     OF RULE 23 AND DUE PROCESS.................................................................................21

VII.   CONCLUSION.....................................................................................................................23

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)..............................................................................4

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)..................................................................4

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   No. 07 Civ. 2207(JGK), 2010 WL 3119374
   (S.D.N.Y. Aug. 6, 2010) ..................................................10, 12, 16

*Castagna v. Madison Square Garden, L.P.*,
   No. 09-CV-10211(LTS)(HP), 2011 WL 2208614
   (S.D.N.Y. June 7, 2011).......................................................................18

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012),
   *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241
   (2d. Cir. 2013)......................................................................................9

*Christine Asia Co., Ltd. v. Yun Ma*,
   No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534
   (S.D.N.Y. Oct. 16, 2019) .............................................. *passim*

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
   (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ...............................................16, 18

*Claridge v. N. Am. Power & Gas, LLC*,
   No. 15-cv-1261 (PKC), 2017 WL 3638455
   (S.D.N.Y. Aug. 23, 2017) .....................................................................5

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)....................................................................8

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)....................................................................9

*Dartell v. Tibet Pharms. Inc.*,
   No. 14-3620, 2017 WL 2815073
   (D.N.J. June 29, 2017) .......................................................................12

**Page**

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)............................................................................... *passim*

*Dornberger v. Metro Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................23

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071(RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ....................................................................................13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................5, 9, 12, 20

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987) ......................................................................19

*In re All. Pharm. Corp. Sec. Litig.*,
279 F. Supp. 2d 171 (S.D.N.Y. 2003)...................................................................11

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012)..............................................................................3, 4

*In re AOL Time Warner Inc. Sec. & ERISA Litig.*,
No. 02 Civ. 5575(SWK), 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006).......................................................................................10

*In re Beacon Assocs. Litig.*,
282 F.R.D. 315 (S.D.N.Y. 2012) ..........................................................................5

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..............................................................17, 19

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liability Litig.*,
No. 17-md-02777-EMC, 2019 WL 2554232
(N.D. Cal. May 3, 2019) .......................................................................................8

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240(CM), 2007 WL 2230177
(S.D.N.Y. July 27, 2007) .......................................................................................3

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ...........................................................................4

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018),
*aff'd sub nom. In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) ...........................................................9, 16, 19, 20

**Page**

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004) ...................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM)(PED), 2010 WL 4537550
    (S.D.N.Y. Nov. 8, 2010) ............................................................................10

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................. *passim*

*In re GSE Bonds Antitrust Litig.*,
    No. 19-cv-1704 (JSR), 2020 WL 3250593
    (S.D.N.Y. June 16, 2020) ................................................................8

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-Civ-8557 (CM), 2014 WL 7323417
    (S.D.N.Y. Dec. 19, 2014) ...........................................................17

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................21, 23

*In re Namenda Direct Purchaser Antitrust Litig.*,
    No. 15 Civ. 7488 (CM), 2020 WL 2749223
    (S.D.N.Y. May 27, 2020) ..............................................................7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................7

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ 5173(RPP), 2008 WL 1956267
    (S.D.N.Y. May 1, 2008) ..............................................................18

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................12

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695(CM), 2007 WL 4115809
    (S.D.N.Y. Nov. 7, 2007) ........................................................16, 21

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................20

*Martignago v. Merrill Lynch & Co., Inc.*,
    No. 11-cv-03923-PGG, 2013 WL 12316358
    (S.D.N.Y. Oct. 3, 2013) ...............................................................17

**Page**

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08 Civ. 8713(PGG), 2010 WL 2399328
  (S.D.N.Y. Mar. 3, 2010) ..........................................................................5, 9, 18

*Monroe Cty. Emps' Ret. Sys. v. YPF Sociedad Anonima*,
  15 F. Supp. 3d 336 (S.D.N.Y. 2014) ..................................................................11

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ..............................................................................19

*Pelzer v. Vassalle*,
  655 F. App'x 352 (6th Cir. 2016) ......................................................................15

*Robinson v. Metro-North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001) ................................................................................4

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................13

*Vargas v. Capital One Fin. Advisors*,
  559 F. App'x 22 (2d Cir. 2014) ..........................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)..........................................................................5, 9, 21

*Yang v. Focus Media Holding Ltd.*,
  No. 11 Civ. 9051 (CM), 2014 WL 4401280
  (S.D.N.Y. Sept. 4, 2014) ....................................................................................12

*Yi Xiang v. Inovalon Holdings, Inc.*,
  327 F.R.D. 510 (S.D.N.Y. 2018) ........................................................................4

*Yuzary v. HSBC Bank, USA, N.A.*,
  No. 12 Civ. 3693(PGG), 2013 WL 5492998
  (S.D.N.Y. Oct. 2, 2013) ...................................................................................7, 16

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §77k..............................................................................................................11, 20
  §77k(e)..........................................................................................................16, 20
  §77l(a)(2) ............................................................................................................20
  §77z-1(a)(4) ..........................................................................................................1

**Page**

Federal Rule of Civil Procedure

Rule 23 ...................................................................................................................3, 21

Rule 23(a) .....................................................................................................................3

Rule 23(b) .....................................................................................................................4

Rule 23(b)(3) .............................................................................................................4, 5

Rule 23(c) ...................................................................................................................18

Rule 23(c)(2)(B) ......................................................................................................21, 23

Rule 23(e) .........................................................................................................3, 5, 7, 21

Rule 23(e)(1)(B) ...........................................................................................................21

Rule 23(e)(2) .........................................................................................................*passim*

Rule 23(e)(2)(A) ............................................................................................................8

Rule 23(e)(2)(B) ............................................................................................................9

Rule 23(e)(2)(C)(i) ...................................................................................................10, 14

Rule 23(e)(2)(C)(ii) ......................................................................................................14

Rule 23(e)(2)(C)(iii) .....................................................................................................14

Rule 23(e)(2)(C)(iv) .....................................................................................................15

Rule 23(e)(2)(D) ..........................................................................................................15

Rule 23(e)(3) .............................................................................................................6, 15

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022)........................................................19

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* (Cornerstone Research 2021) .............................................................19

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), Panther Partners Inc. ("Lead Plaintiff"), on behalf of itself and the Settlement Class, respectfully submits this memorandum of law in support of its motion for final approval of the $7,500,000 Settlement (the "Settlement Amount") reached in this action (the "Action") and approval of the proposed Plan of Allocation. The terms of the Settlement are set forth in the Stipulation of Settlement, dated November 15, 2021 (ECF No. 107) (the "Stipulation").[1]  The Court preliminarily approved the Settlement on December 30, 2021 (ECF No. 111) (the "Preliminary Approval Order").

## I.    INTRODUCTION

The $7.5 million recovery is the result of Lead Plaintiff's rigorous multi-year effort to prosecute this litigation, reached after arm's-length settlement negotiations by experienced and knowledgeable counsel, overseen by a nationally recognized mediator.  The Settlement represents a very favorable result for the Settlement Class and easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement is especially beneficial to the Settlement Class in light of the substantial litigation risks Lead Plaintiff faced.  The gravamen of Lead Plaintiff's claims was that the Registration Statement issued by Defendant Jianpu Technology Inc. ("Jianpu" or the "Company") in connection with its IPO omitted material facts about the risks to the Company's business posed by Chinese laws and regulations applicable to the financial service providers that offered loans on

---

[1]    All capitalized terms not otherwise defined herein shall have the meanings set forth in the Stipulation, the Joint Declaration of Erin W. Boardman and Todd Kammerman in Support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Joint Declaration" or "Joint Decl."), and in the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Fee Memorandum"), submitted concurrently herewith.  Citations are omitted and emphasis is added throughout, unless otherwise noted.

Jianpu's online platform. Following the IPO, authorities in China stepped up regulation of the online lending industry, causing Jianpu's revenue growth to slow dramatically and the price of its ADSs to decline – thereby causing damages to Lead Plaintiff and the Settlement Class. Joint Decl., ¶23.

While Lead Plaintiff believes in the merit of its claims, Defendants had strong and credible arguments that could ultimately be successful in showing, among other things, that: (i) Defendants did not make any actionable misstatements or omissions in the Registration Statement; (ii) Lead Plaintiff's claims were hindsight pleading because the applicable regulations that impacted Jianpu were not enacted until after the IPO; (iii) the Registration Statement accurately described the state of regulations at the time of the IPO and warned investors of the risk of possible new regulations; and (iv) even if Lead Plaintiff was able to prove Defendants' liability, damages were non-existent as Jianpu's ADS price had already declined because of other factors. Had Lead Plaintiff failed to establish any one of the elements of its claims, or failed to refute Defendants' contentions, the entire case would be lost or damages could be found to be much lower than claimed, if damages were found to exist at all. *Id.*, ¶¶52-55.

As detailed in the Joint Declaration, Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, as they had conducted a thorough investigation into the claims, successfully opposed Defendants' joint motion to dismiss, commenced discovery, drafted a detailed mediation statement, and participated in a formal mediation session and numerous follow-up discussions with the mediator. *See generally* Joint Decl. Based on the results of this work, Lead Plaintiff knew that Defendants could have succeeded in either opposing class certification or in obtaining summary judgment, resulting in a lower recovery or no recovery at all. Likewise, there was no assurance that a trial would provide a

better outcome.  Moreover, a skilled and highly reputable mediator – Greg Lindstrom, Esq. of Phillips ADR– assisted the parties in reaching a resolution of the case for $7.5 million.  Joint Decl., ¶¶40-44.

Given the risks to proceeding and the very favorable recovery obtained, Lead Plaintiff respectfully submits that the $7.5 million Settlement and the Plan of Allocation – which was prepared with the assistance of Lead Plaintiff's damages consultant and is substantially similar to numerous other such plans that have been approved in this Circuit – are fair and reasonable in all respects.  Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Joint Declaration for a detailed discussion of the factual background and procedural history of the Action, the efforts undertaken by Lead Plaintiff and Lead Counsel during the course of the Action, the risks of continued litigation, and the negotiations leading to the Settlement.

## III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court is hearing the proposed Settlement prior to any hearing or ruling on class certification, making it necessary for the Court to certify a class pursuant to Rule 23 prior to approving the proposed Settlement.  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).  Here, all the requirements for class certification are met.

Each of the four Rule 23(a) prerequisites to class certification – (a) numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation – is satisfied.  First, numerosity is satisfied in cases involving nationally traded securities as Jianpu ADSs.  *See, e.g.*, *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007).  Second, commonality exists where, as here, all members of the Settlement Class

purchased Jianpu ADSs subject to the same alleged misrepresentations and omissions contained in the Registration Statement.  *See, e.g.*, *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 522 (S.D.N.Y. 2018) (in an action alleging a false and misleading registration statement, the central issue is common to all class members).  Third, typicality is satisfied by Lead Plaintiff having suffered losses following the disclosures, as the other Settlement Class Members did.  *See, e.g.*, *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) ("Typicality . . . is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").  Fourth, Lead Plaintiff is an adequate representative because it has no conflicts with the other Settlement Class Members, and has been actively involved in the case from its inception, maintaining communication with Lead Counsel, who are qualified, experienced, and able to conduct the litigation.  *See, e.g.*, *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

A proposed class action must also satisfy one of the tests of Rule 23(b).  *See, e.g.*, *Am. Int'l Grp.*, 689 F.3d at 238.  Here, certification of the Settlement Class is appropriate because common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication.  *See* Rule 23(b)(3); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 607 (1997).  This standard is easily met here because the core of the case is Defendants' alleged misrepresentations and omissions in connection with the IPO, which predominates over any theoretical individual issue that may arise.  *See, e.g.*, *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341, 346-51 (S.D.N.Y. 2015) (in a securities class action, common questions about misstated registration statement predominated over individual issues).  Additionally, the class action mechanism is the best method of resolving all the individual claims aggregated in this matter because the controversy for each class member is identical and will result in the adjudication of all

- 4 -

claims in one suit and one forum. *See, e.g.*, *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 334 (S.D.N.Y. 2012).

In addition, Rule 23(b)(3) provides a right to opt-out or object to a proposed settlement. *See, e.g.*, *Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-1261 (PKC), 2017 WL 3638455, at *2 (S.D.N.Y. Aug. 23, 2017). Here, the Notice provided Settlement Class Members with, among other things, a right to object or exclude themselves from the Settlement Class. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Mailing Decl."), Ex. A (Notice at 2, 9-10), submitted herewith. Accordingly, the standards for certifying the Settlement Class have been met.

## IV.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.   The Law Favors and Encourages Settlements

"The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Rule 23(e). The court may approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The evaluation of a proposed settlement requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Id.* "Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713(PGG), 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation."). Thus, the Second Circuit has instructed that, while a court should not give

"rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

As set forth below, the $7.5 million Settlement here, particularly in light of the significant litigation risks Lead Plaintiff faced, and the recovery relative to estimated maximum recoverable damages, is manifestly reasonable, fair, and adequate under all of the pertinent factors courts use to evaluate a settlement. Accordingly, the Settlement warrants final approval by this Court.

## B. The Settlement Must Be Procedurally and Substantively Fair, Reasonable, and Adequate

Rule 23(e)(2), as amended, provides that courts should consider certain factors when determining whether a class action settlement is "fair, reasonable, and adequate" such that final approval is warranted:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)     the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* Factors"), which overlap the Rule 23(e)(2) factors, when determining whether to approve a class settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the

settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class

action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of

reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of

reasonableness of the settlement fund to a possible recovery in light of all of the attendant risks of

litigation. *Grinnell*, 495 F.2d at 463; *see In re Payment Card Interchange Fee & Merch. Disc.

Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors . . .

add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the

two); *see also In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM), 2020 WL

2749223, at *2-*3 (S.D.N.Y. May 27, 2020) (applying Rule 23(e)(2) along with *Grinnell* factors).

   For a settlement to be deemed substantively and procedurally fair, reasonable, and adequate,

not every factor need be satisfied.  "'[R]ather, the court should consider the totality of these factors

in light of the particular circumstances.'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436,

456 (S.D.N.Y. 2004).  Additionally, "'[a]bsent fraud or collusion, [courts] should be hesitant to

substitute [their] judgment for that of the parties who negotiated the settlement.'" *Yuzary v. HSBC

Bank, USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013); *see

also Glob. Crossing*, 225 F.R.D. at 455 (courts should not substitute their "'business judgment for

that of counsel, absent evidence of fraud or overreaching'").

   Under Rule 23(e)(2), courts "must assess at the preliminary approval stage whether the

parties have shown that the court will likely find that the [Rule 23(e)(2)] factors weigh in favor of

final settlement approval." *Payment Card Interchange*, 330 F.R.D. at 28.  The Preliminary Approval

Order made such findings.  Preliminary Approval Order at 1-2 & ¶3.  Courts have noted that

satisfaction of these factors is virtually assured where, as here, little has changed since preliminary

approval. *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) (court re-adopted its analysis supporting grant of preliminary approval and limited its focus to any new developments impacting that analysis); *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liability Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now").

### C.   The Proposed Settlement Is Procedurally and Substantively Fair, Reasonable, and Adequate

#### 1.   The Settlement Satisfies the Requirements of Rule 23(e)(2)

##### a.   Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

The determination of adequacy "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Lead Plaintiff's interests are not antagonistic to, and in fact are directly aligned with, the interests of the other Settlement Class Members. Additionally, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class by zealously prosecuting this Action, including by filing a detailed Complaint, successfully opposing Defendants' motion to dismiss, initiating fact discovery, and participating in a mediation session with Defendants and continuing to negotiate through communications with the mediator. *See generally* Joint Decl. Through each step, Lead Plaintiff and Lead Counsel have strenuously advocated for the best interests of the Settlement Class. Lead Plaintiff and Lead Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

**b.      The Proposed Settlement Was Negotiated at Arm's
Length Before an Experienced Mediator**

The Settlement satisfies Rule 23(e)(2)(B) because it is the product of arm's-length negotiations between the parties' counsel before a neutral mediator, with no hint of collusion.  Joint Decl., ¶¶40-44.  Indeed, the use of the mediation process provides compelling evidence that the Settlement is not the result of collusion.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020); *McMahon*, 2010 WL 2399328, at *4 ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.") (citing *Wal-Mart Stores*, 396 F.3d at 116); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

It is well-settled in this Circuit that "a class action settlement enjoys a strong 'presumption of fairness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel." *Advanced Battery*, 298 F.R.D. at 175 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013); *McMahon*, 2010 WL 2399328, at *4 (settlement was "procedurally fair, reasonable, adequate and not a product of collusion" where it was reached after "arm's-length negotiations between the parties").  Accordingly, this factor weighs heavily in favor of final approval of the Settlement.

### c.    The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* Factors overlap, as they address the substantive fairness of the Settlement in light of the risks posed by continuing litigation.  As set forth below, these factors weigh in favor of final approval.

### (1)    The Risks of Establishing Liability at Trial

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Glob. Crossing*, 225 F.R.D. at 459.  As a preliminary matter, the significant unpredictability and complexity posed by securities class actions weigh in favor of final approval.  Indeed, "'[i]n evaluating the settlement of a securities class action, federal courts, including [courts in this District], have long recognized that such litigation is notably difficult and notoriously uncertain.'"   *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) ("The complexity of the case weighs in favor of approving the proposed settlement."); *In re AOL Time Warner Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575(SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation.").  Although Lead Plaintiff and Lead Counsel firmly believe that the claims asserted in the Action are meritorious, and that they would prevail at trial, further litigation against Defendants posed risks that made any recovery uncertain.

Defendants have vigorously contested their liability and have denied and continue to deny each and every claim and allegation of wrongdoing.  Specifically, Defendants have argued that Lead Plaintiff could not establish that any of the alleged misstatements were materially false or misleading

at the time they were made.  According to Defendants, the evidence would show that the financial service providers operating on Jianpu's platform were not in violation of applicable regulations at the time of the IPO, the regulations that were enacted after the IPO could not be a basis for Defendants' liability, and the Registration Statement adequately warned of the risk of new regulations.  Joint Decl., ¶¶52-53.  While the parties disagreed about the merits of these and other arguments, Lead Plaintiff recognized that if the Court at summary judgment or a jury at trial found them compelling, the Settlement Class would recover nothing.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig*., 308 F. Supp. 2d 249, 254-55 (S.D.N.Y. 2004) (claims based on decline in industry that occurred after the effective date of the offering were not actionable); *see also Monroe Cty. Emps' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 356 (S.D.N.Y. 2014) ("There is no duty to . . . predict the likelihood of future events[.]"); *In re All. Pharm. Corp. Sec. Litig.*, 279 F. Supp. 2d 171, 189-90 (S.D.N.Y. 2003) (dismissing Section 11 claims on summary judgment).

### (2)     The Risks of Establishing Causation and Damages at Trial

The risks of establishing liability apply with equal force to establishing damages.  Here, while Defendants have the initial burden of showing the absence of loss causation, Defendants maintained that they would demonstrate at summary judgment or trial that the decline in the price of Jianpu ADSs was caused by new developments and factors unrelated to the alleged misstatements.  Joint Decl., ¶54.  Defendants would further argue that even if damages were not eliminated, they were far less than what Lead Plaintiff claimed.  In particular, a substantial portion of the decline in Jianpu's ADS price had already occurred by the time of the corrective disclosures, and Defendants contended that this decline could not be attributed to the alleged misstatements and omissions.  *Id.*, ¶55.  Resolving disputed issues regarding causation and damages would require expert testimony, and Defendants would invariably put forth well-credentialed experts.  Courts recognize a substantial

litigation risk from uncertainty as to which expert's view will be credited by a jury. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in this "'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found"); *Glob. Crossing*, 225 F.R.D. at 459 ("'[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.'").

In light of the very significant risks Lead Plaintiff faced at the time of the Settlement with regard to establishing liability and damages, this factor weighs heavily in favor of final approval.

### (3) The Settlement Eliminates the Additional Costs and Delay of Continued Litigation

The anticipated complexity, cost, and duration of the Action was considerable. *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *Bellifemine*, 2010 WL 3119374, at *3. This case has already been pending for more than three years, with formal discovery in its early stages. If not for the Settlement, the parties would have engaged in comprehensive fact and expert discovery, including document production, depositions, requests to admit, and third-party discovery. Discovery, which is typically costly and lengthy in these types of cases, would be even more expensive and protracted here because Jianpu and virtually all of the relevant witnesses and documents are located in China – where it is notoriously difficult to conduct discovery. *See Dartell v. Tibet Pharms. Inc.*, No. 14-3620, 2017 WL 2815073, at *6 (D.N.J. June 29, 2017) ("Gathering evidence in China for litigation that is occurring in the United States is a difficult and expensive process."); *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051 (CM) (GWG), 2014 WL 4401280, at *6 (S.D.N.Y. Sept. 4, 2014) ("[i]t can be difficult and sometimes impossible to obtain evidence from China").

Among other hurdles, Lead Plaintiff would need to navigate China's "state secrecy" and data privacy laws; incur expenses associated with translation services and international travel; contend with China's cumbersome deposition-approval procedures, as well as potential COVID-related travel restrictions; and serve letters of request through the Hague Convention to obtain evidence from third-parties located outside of the United States.   Joint Decl., ¶¶58-61.   Consequently, fact discovery would be especially protracted and expensive, with no guarantee of obtaining needed discovery.

Undoubtedly, there would also be discovery disputes and motions, requiring Court intervention.   In addition to any discovery-related motion practice, Lead Plaintiff would move for class certification and Defendants would likely move for summary judgment.   The Court would need to rule on those motions, as well as any *Daubert* challenges.   Including the preparation for what would likely be a multi-week trial, it would be years of litigation before the Settlement Class could possibly receive any recovery.   Even if Lead Plaintiff prevailed at trial and obtained a judgment, there was a significant risk that it would not be able to enforce such judgment against Jianpu in the Chinese courts.   Joint Decl., ¶62.

Such a lengthy and highly uncertain process would not serve the best interests of the Settlement Class compared to the immediate, certain monetary benefits of the Settlement.   *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would

necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* Factors, all weigh in favor of final approval of this $7.5 million settlement.

> ### d.   The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken appropriate steps to ensure that the Settlement Class is notified about the Settlement.  Pursuant to the Preliminary Approval Order (ECF No. 111), more than 14,300 copies of the Notice and Proof of Claim were mailed to Potential Settlement Class Members and nominees, and the Summary Notice was published in *Investor's Business Daily* and transmitted electronically on *PR Newswire*.  *See* Mailing Decl., ¶¶11-12.  Additionally, the Settlement-specific website, created pursuant to the Preliminary Approval Order, includes the key Settlement documents – the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.*, ¶14.  Settlement Class Members have until March 4, 2022 to object to the Settlement.  While that date has not yet passed, to date there have been no objections to the Settlement.  Settlement Class Members also have until April 28, 2022 to submit claim forms.  The claims process is similar to the process typically used in securities class action settlements.  *See Christine Asia*, 2019 WL 5257534, at *14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective").  This factor therefore supports final approval.

> ### e.   Lead Counsel's Request for Attorneys' Fees Is Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Rule 23(e)(2)(C)(iii).  Consistent with the Notice, and as discussed in the Fee Memorandum, Lead Counsel seek an award of attorneys' fees in the amount of 33-1/3% of

the Settlement Amount, and expenses in the amount of $31,019.24, in addition to interest on both amounts, to be paid at the time of award.  As set forth in Lead Counsel's Fee Memorandum, this request is in line with fee awards in this District in similar common-fund cases.[2]

Lead Counsel's fee request is reasonable, and has been approved by Lead Plaintiff. Moreover, the Settlement Class is being fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments.  Accordingly, this factor supports final approval of the Settlement.

### f.    The Parties Have No Other Agreements Besides an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3).  The Settling Parties have entered into a Supplemental Agreement, identified in the Stipulation (¶10.5), which provides that Defendants have the option to terminate the Settlement in the event that valid requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold.  This type of agreement is commonplace in securities cases.  The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the Settling Parties.

### g.    The Settlement Ensures Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D), the final factor, considers whether class members are treated equitably.  As discussed further below in §V, Lead Counsel developed the Plan of Allocation in consultation with their damages consultant to treat Settlement Class Members equitably relative to each other by: (i)

---

[2]    The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid when the Court enters the Judgment and an Order awarding such fees and expenses.  *See* Stipulation, ¶8.2; *see also Pelzer v. Vassalle*, 655 F. App'x 352, 365 (6th Cir. 2016) (finding the "quick-pay provision" did "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

calculating Authorized Claimant's recognized losses in accordance with Section 11(e) of the Securities Act; and (ii) providing that each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on their recognized losses.  Lead Plaintiff will be subject to the same formula for distribution of the Net Settlement Fund as every other Settlement Class Member.  This factor therefore merits granting final approval of the Settlement.

Based on the foregoing, Lead Plaintiff and Lead Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the Settlement.

### 2.   The Settlement Satisfies the Remaining *Grinnell* Factors

#### a.   The Lack of Objections to Date Supports Final Approval

The reaction of the class to the settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy,'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the "'absence of objections may itself be taken as evidencing the fairness of a settlement.'"  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  "A favorable reception by the class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval."  *Bellifemine*, 2010 WL 3119374, at *3.

While the objection deadline has not passed, no objections have been received to date.  This positive reaction supports approval of the Settlement.  *See Yuzary*, 2013 WL 5492998, at *6 (the "favorable response" from the class "demonstrates that the class approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelmingly positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

- 16 -

### b.   Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* Factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *Martignago v. Merrill Lynch & Co., Inc.*, No. 11-cv-03923-PGG, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'"). "To satisfy this factor, parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that the PSLRA prohibits discovery until the motion to dismiss is denied); *see also Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

There can be no question that Lead Plaintiff and Lead Counsel had sufficient information to assess the adequacy of the Settlement.  As detailed in the Joint Declaration, Lead Plaintiff and Lead Counsel negotiated the Settlement only after conducting a thorough factual investigation, which included the review and analysis of SEC filings, news articles, transcripts of conference calls, information concerning the online lending industry in China, Jianpu's ADS price and volume data, and analyst reports.  The parties also briefed Defendants' motion to dismiss, commenced discovery, and drafted detailed mediation statements.  *See generally* Joint Decl.  The parties then engaged in a formal mediation session, overseen by Greg Lindstrom, Esq., where the parties' opposing positions and arguments were thoroughly considered, and had numerous follow-up negotiations, facilitated by Mr. Lindstrom, which ultimately resulted in the Settlement.  *Id.*

Thus, by the time of the Settlement, Lead Plaintiff was well-versed in the strengths and weaknesses of the case, and was in a position to realistically assess the proposed Settlement. This factor weighs in favor of final approval.

### c.   Maintaining Class-Action Status Through Trial Presents a Continuing Risk

Lead Plaintiff's ability to maintain class-action status through trial presented a potential risk in this Action. While a class certification motion had yet to be filed, Defendants undoubtedly would challenge certification. Even if the Court certified a class over Defendants' opposition, Defendants may have moved to decertify the class before trial or on appeal, as class certification may be reviewed at any stage of the litigation. *See Christine Asia*, 2019 WL 5257534, at *13 (stating this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Rule 23(c) (authorizing a court to decertify a class at any time). "The risk of maintaining class status throughout trial . . . weighs in favor of final approval." *McMahon*, 2010 WL 2399328, at *5.

### d.   Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval because a "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" *Castagna v. Madison Square Garden, L.P.*, No. 09-CV-10211(LTS)(HP), 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at *9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement"). A "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008). Here, there was no assurance that Defendants could withstand a greater judgment, as Jianpu holds

limited insurance policies and its business has been negatively impacted by a number of issues. But even if Defendants could pay a larger judgment, all other factors favor final approval.

### e.   The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). A court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

Here, "[b]ecause [Lead Plaintiff] face[s] serious challenges to establishing liability, . . . consideration of [Lead Plaintiff's] best possible recovery must be accompanied by the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* Factor is "a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery"). The Settlement represents a recovery of approximately 9.2% of reasonably recoverable damages, Joint Decl., ¶7, an amount that far exceeds the average recovery of 1.8% in cases settled in 2021. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at 24, figure 22, attached hereto as Exhibit A; *see also* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis* at 7, Fig. 6 (Cornerstone Research 2021), attached hereto as Exhibit B (noting that in securities settlements from 2011-2020, the median

settlement in cases alleging only Sections 11 and 12(a)(2) claims obtained 7.4% of alleged statutory damages).[3]

Moreover, the $7.5 million Settlement Amount "was agreed upon only after careful consideration, both by competent Lead Counsel and by [a neutral mediator]" – concluding that the Settlement represented a very good recovery for the Settlement Class in light of the substantial litigation risks Lead Plaintiff faced. *Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one-tenth – or less – of Plaintiffs' potential recovery," such a recovery is within "the range of reasonableness" where "the risks of a zero – or minimal – recovery scenario are real"). This factor weighs in favor of final approval.

In sum, the *Grinnell* Factors, and the Rule 23(e)(2) factors, individually and collectively, weigh strongly in favor of the Court's approval of the Settlement.

## V.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as for approving the Settlement as a whole: namely, "'it must be fair and adequate.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'" *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16. Here, the Plan of Allocation was prepared with the assistance of Lead Plaintiff's damages consultant and has a rational basis, as it is consistent with calculating damages under Section 11(e) of the Securities Act and is designed to achieve an equitable and rational distribution of the Net Settlement Fund to Authorized Claimants.

---

[3]    Not surprisingly, Defendants estimated recoverable damages at a significantly lower amount.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proof of Claim forms that are approved for payment from the Net Settlement Fund under the Plan of Allocation.  Joint Decl., ¶¶72-73.  The Plan of Allocation treats all Settlement Class Members equitably, as everyone who submits a valid and timely Proof of Claim, and does not otherwise request exclusion from the Settlement Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, provided the payment amount is $10.00 or more.  *See id.*; *see also* Mailing Decl., Ex. A (Notice) at 5-7.

Lead Plaintiff and Lead Counsel believe that the Plan of Allocation is fair and reasonable, and respectfully submit that it be approved by the Court.  Notably, there have been no objections to the Plan, which supports the Court's approval.  *See Veeco*, 2007 WL 4115809, at *7.

## VI.   NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Rule 23(c)(2)(B), and that it be directed to class members in a "reasonable manner."  Rule 23(e)(1)(B).  Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart Stores*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014).  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The Notice and the method used to disseminate it to Potential Settlement Class Members satisfy these standards.  The Court-approved Notice and Proof of Claim (the "Notice Packet") inform Settlement Class Members of, among other things: (i) the pendency of the Action; (ii) the nature of the Action and the claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan of Allocation; (v) Settlement Class Members' rights to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses or Award to Plaintiff; (vi) the binding effect of a judgment on Settlement Class Members; and (vii) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses and an Award to Plaintiff.  The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim; and (ii) objecting to any aspect of the Settlement, including the proposed Plan of Allocation and the request for attorneys' fees and expenses and Award to Plaintiff.

The Notice also contains all of the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys' fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief statement explaining the reasons why the parties are proposing the Settlement.

In accordance with the Preliminary Approval Order, Gilardi & Co. LLC ("Gilardi"), the Court-approved Claims Administrator, commenced the mailing of the Notice Packet by First-Class Mail to Potential Settlement Class Members, brokers, and nominees on January 21, 2022.  As of February 17, 2022, more than 14,300 copies of the Notice Packet have been mailed.  Mailing Decl., ¶11.  Gilardi also published the Summary Notice in the *Investor's Business Daily* and transmitted it

electronically on *PR Newswire*. *Id.*, ¶12, Ex. C. Additionally, Gilardi posted the Notice Packet, as well as other important documents, on the website maintained for the Settlement. *Id.*, ¶14.

The combination of individual First-Class Mail to all Potential Settlement Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances." Rule 23(c)(2)(B); *see also Merrill Lynch Tyco Research*, 249 F.R.D. at 133 ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). Indeed, this method of providing notice has been routinely approved in securities class actions and other class actions. *E.g.*, *Christine Asia*, 2019 WL 5257534, at *16 (finding that direct First-Class Mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances"); *Dornberger v. Metro Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VII.    CONCLUSION

The $7.5 million Settlement obtained by Lead Plaintiff and Lead Counsel represents a substantial recovery for the Settlement Class, particularly in light of the significant litigation risks Lead Plaintiff faced, including the very real risk of the Settlement Class receiving no recovery at all. For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

DATED:  February 18, 2022                    Respectfully submitted,

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             ERIN W. BOARDMAN
                                             MAGDALENE ECONOMOU


                                                     s/ Erin W. Boardman
                                             ————————————————————
                                               ERIN W. BOARDMAN

                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)
                                             srudman@rgrdlaw.com
                                             eboardman@rgrdlaw.com
                                             meconomou@rgrdlaw.com

                                             ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                             ELLEN GUSIKOFF STEWART
                                             655 West Broadway, Suite 1900
                                             San Diego, CA 92101
                                             Telephone: 619/231-1058
                                             619/231-7423
                                             elleng@rgrdlaw.com

                                             ABRAHAM, FRUCHTER
                                               & TWERSKY, LLP
                                             JACK G. FRUCHTER
                                             LAWRENCE D. LEVIT
                                             TODD KAMMERMAN
                                             450 Seventh Avenue, 38th Floor
                                             New York, NY 10123
                                             Telephone: 212/279-5050
                                             212/279-3655 (fax)
                                             jfruchter@aftlaw.com
                                             llevit@aftlaw.com
                                             tkammerman@aftlaw.com

                                             Lead Counsel for Lead Plaintiff

**CERTIFICATE OF SERVICE**

I, Erin W. Boardman, hereby certify that on February 18, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to received such notice.

s/ Erin W. Boardman
ERIN W. BOARDMAN